**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                         No. CR 06-1837 JB

ANGEL MORENO-HERNANDEZ,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Angel Moreno-Hernandez' Objections to Presentence Report and Sentencing Memorandum, filed February 5, 2007 (Doc. 30)("Sentencing Memorandum"). The Court held a sentencing hearing in this case on April 3, 2007. The primary issues are: (i) whether the Court should grant Moreno-Hernandez a downward departure under the United States Sentencing Guidelines because his criminal history category over-represents his criminal history; (ii) whether the Court should grant Moreno-Hernandez a downward departure under the Guidelines because Moreno-Hernandez' case involves circumstances that the Sentencing Commission did not adequately consider; and (iii) whether, consistent with its authority under United States v. Booker, 543 U.S. 220 (2005), the Court should grant Moreno-Hernandez a variance from the advisory sentence the Guidelines recommend. Because the Court believes that Moreno-Hernandez' criminal history category over-represents his criminal history, the Court will grant a downward departure on that ground; the Court will not otherwise depart under the Guidelines. Because the Court believes that the sentence the Guidelines recommend is greater than necessary to comply with federal sentencing goals, the Court will vary from the Guidelines and impose a

reasonable sentence.

## PROCEDURAL BACKGROUND

On August 22, 2006, a federal grand jury returned an indictment charging Moreno-Hernandez with illegal re-entry into the United States after having been deported in violation of 8 U.S.C. § 1326(a) and (b). See Indictment, filed August 22, 2006 (Doc. 14). Moreno-Hernandez pled guilty to the charge contained in the Indictment on November 6, 2006. See Plea Minute Sheet, filed November 6, 2006 (Doc. 25).

The United States Probation Office ("USPO") disclosed its Presentence Investigation Report ("PSR") on December 18, 2006. See PSR at 2. The USPO issued an addendum to the PSR on February 23, 2007. See Addendum to the Presentence Report. On March 14, 2007, the USPO updated the PSR's Face Sheet to reflect that the case had been re-assigned from the Honorable William P. Johnson to the Court, and to correct the date of sentencing and the number of days that Moreno-Hernandez had been held in custody. See Memorandum from Bernice G. Castillo to the Court (dated March 14, 2007).

## LAW REGARDING GUIDELINE SENTENCES

The Supreme Court of the United States' holding in United States v. Booker "requires a sentencing court to consider Guideline ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well." 543 U.S. at 245-46. Under the new advisory Guidelines scheme, "district courts have a freer hand in determining sentences." United States v. Trujillo-Terrazas, 405 F.3d 814, 819 (10th Cir. 2005). Thus, "while the Guidelines will exert gravitational pull on all sentencing decisions . . . district courts now have more discretion to tailor sentences to the individual circumstances of a defendant." Id.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(2)(A)-(D). See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty of an offense described in any Federal Statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case."). To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims. See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, the United States Court of Appeals for the Tenth Circuit has clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to considerable deference. See United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"). They are significant because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses." Id. (internal quotations

omitted). See United States v. Kristl, 437 F.3d 1050, 1054 (10th Cir. 2006)(holding that sentences within the Guidelines' recommended range will be presumed reasonable). In summation, a sentencing court must now consider all the factors enumerated in 18 U.S.C. § 3553, including the Guidelines, and resolve conflicts between them; the Guidelines remain a highly significant factor in the court's analysis, and sentences that fall within the Guidelines' range are presumptively reasonable.

Moreover, in Justice Breyer's remedial opinion in United States v. Booker, the Supreme Court recognized the important role that the advisory Guidelines continue to play in facilitating Congress' goal of achieving national uniformity of sentencing. See 543 U.S. at 246. To conform with Congressional intent, sentences must be "reasonable." Id. at 260-61. Consistent with that recognition, and the presumptive reasonableness of guideline sentences, the Tenth Circuit has adopted a two-step approach to reviewing criminal sentences for reasonableness. See United States v. Kristl, 437 F.3d at 1055. First, the Tenth Circuit reviews the district court's consideration of the applicable guideline range; if "the district court properly considered the relevant Guidelines range and sentenced the defendant within that range, the sentence is presumptively reasonable." Id. Second, once this presumption is established, the burden shifts to the defendant to demonstrate why the sentence is unreasonable in light of the other relevant sentencing factors. See id.

On the other hand, criminal sentences that vary materially from the properly calculated guideline sentencing range are not accorded a presumption of reasonableness. See United States v. Cage, 451 F.3d at 594-95. The Tenth Circuit has explained that the determination whether a sentence is reasonable depends on the strength of the correlation between the magnitude of the presence of the factors enumerated in 18 U.S.C. § 3553(a) and the extent of the district court's

variance from the guideline sentence.  See id.

## ANALYSIS

Moreno-Hernandez raises several objections to the materials that the USPO has compiled. First, Moreno-Hernandez notes a number of factual inaccuracies in the PSR.  Second, he argues that his criminal history category over-represents his criminal history and that the Court should grant him a downward departure because his case involves unique circumstances that the Sentencing Commission did not adequately consider in constructing the Guidelines.  Finally, Moreno-Hernandez requests the Court grant a variance from the guideline sentence because the sentence the Guidelines recommend is not reasonable.

**I.      FACTUAL OBJECTIONS.**

At the sentencing hearing, Moreno-Hernandez raised three factual objections to the PSR. First, Moreno-Hernandez noted that paragraph 7 of the PSR is labeled "Defendant's Version" and indicates that he had not provided a version of the offense conduct; Moreno-Hernandez indicated that paragraph 10 of the PSR contained his version, and requested that the Court correct paragraph 7 to include a cross reference to paragraph 10.  See Transcript of Hearing at 4:12-15 (Converse)(taken April 6, 2007)("Transcript").[1]  Second, paragraph 30 of the PSR states that, after the United States deported him on September 22, 2005, Moreno-Hernandez lived alone in Mexico until May 26, 2006.  See PSR ¶ 30, at 10.  Moreno-Hernandez states that this is inaccurate, and requests that the Court change paragraph 30 to reflect that he lived not alone, but with his grandmother, while in Mexico.  See Transcript at 4:23-25 (Converse).  Finally, paragraph 34

---

[1]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

indicates that Moreno-Hernandez met with Dr. David Landau, Ph.D., resident psychiatrist at the Torrance County Detention Facility.  See PSR ¶ 34, at 11.  Moreno-Hernandez requests that the Court modify paragraph 34 to reflect that Dr. Landau is an M.D., not a Ph.D.  See Transcript at 5:12-13 (Converse).

Neither the United States nor the USPO object to the changes that Moreno-Hernandez requests.  See Transcript at 4:16-17, 5:5-7, 5:14-16 (Cairns); 4:18-20; 5:8-10; 5:17-19 (Castillo).  The Court will sustain Moreno-Hernandez' objections and make the changes he requests.

## II. MORENO-HERNANDEZ' CRIMINAL HISTORY CATEGORY OVER-REPRESENTS HIS CRIMINAL HISTORY.

Moreno-Hernandez' criminal history score results from two previous offenses: (i) a November 26, 2000 misdemeanor conviction in Los Angeles County Superior Court for driving while intoxicated; and (ii) a June 24, 2005 felony carjacking conviction in Los Angeles County Superior Court.  The USPO assigned Moreno-Hernandez two criminal history points for each of these convictions.  See PSR ¶¶ 21-22, at 7.  The USPO added two points to Moreno-Hernandez' criminal history score because his offense of conviction occurred while he was still under sentence for the carjacking offense, see U.S.S.G. § 4A1.1(d), and one additional point because his offense of conviction was committed less than two years after his release from custody, see U.S.S.G. § 4A1.1(e).  Moreno-Hernandez' total of seven criminal history points results in a criminal history category of IV.

Moreno-Hernandez argues that, because of the age and circumstances surrounding his previous convictions, combined with the significant impact the timing of his re-entry has on his criminal history score, a criminal history category of IV substantially over-represents his criminal

history.  Moreno-Hernandez requests that, pursuant to U.S.S.G. § 4A1.3(b), the Court grant him a downward departure so that his criminal history category more accurately reflects his actual criminal history.

The USPO considered a downward departure under U.S.S.G. § 4A1.3(b), but declined to recommend such a departure, because, in the opinion of the probation officer that prepared the PSR, both of Moreno's convictions were for serious crimes.  See PSR ¶ 60, at 18.  At the sentencing hearing, however, the United States' counsel noted that Moreno-Hernandez' earlier carjacking conviction was for a serious crime, but that his overall criminal history is less extensive than what he typically sees for defendants with a criminal history category of IV.  See Transcript at 7:4-8 (Cairns).  Accordingly, the United States does not object to the Court sentencing Moreno-Hernandez consistent with a criminal history category of III.  See id. at 7:16-18 (Cairns).

The Court agrees with Moreno-Hernandez and the United States, and believes that Moreno-Hernandez' criminal history category over-represents his criminal history.  The Court notes that Moreno-Hernandez' criminal history is limited to these two criminal incidents; this limited number of encounters with law enforcement make his case different from most of the other defendants that the Court sentences with a criminal history category of IV.  Even in cases like Moreno-Hernandez', in which a defendant's criminal history score is the result of a limited number of convictions, the point-generating convictions of defendants with a criminal history category of IV are frequently accompanied by a long list of arrests and other encounters with law enforcement.  Moreover, while the Court believes that his convictions are for serious offenses, the Court notes that five of Moreno-Hernandez' seven criminal history points are associated with the same offense, and that three of those five points relate to the timing, and not the substance, of his offense of conviction.  The Court

believes that a criminal history category of IV substantially over-represents his criminal history and tendencies, and does not reflect accurately the risk that he will re-offend in the future when released. The Court will grant Moreno-Hernandez a downward departure, consistent with U.S.S.G. § 4A1.3(b), and compute his guideline sentence consistent with a criminal history category of III.

### III.   THE COURT WILL NOT GRANT A DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. § 5K2.0.

Moreno-Hernandez requests that the Court grant him a downward departure, pursuant to U.S.S.G. § 5K2.0, because his case involves circumstances that the Sentencing Commission did not adequately consider in constructing the Guidelines. See Sentencing Memorandum at 22. Moreno-Hernandez' argument focuses principally on his mental illness and the impact of that illness on the carjacking offense that constitutes the basis for the most significant enhancement in his offense level. Moreno-Hernandez represents that he suffers from schizophrenia, and that, before he was arrested for carjacking, he was regularly hearing voices. See Transcript at 8:21-9:8 (Converse).

Moreno-Hernandez contends that he has no history of acting violently, and that, in the one carjacking incident during which he was alleged to have been violent, he acted out of fear. See id. at 9:11-16 (Converse). Moreno-Hernandez acknowledges that the precise details of the carjacking incident remain in dispute, but maintains that, to the best of his recollection, he never struck the victim of his carjacking offense. See id. at 13:13-15 (Converse). Moreno-Hernandez explains that, at the time of the carjacking, he believed that a group of men were pursuing him, and that he commandeered the automobile to escape the men. See id. at 9:16-18 (Converse). He represents that he was hearing voices at the time and was not taking medication. See id. at 9:19-22 (Converse).

The Court has carefully considered Moreno-Hernandez' explanation regarding his carjacking

offense, but has also considered other descriptions of the incident. The Court notes that, according to police reports, Moreno-Hernandez struck the carjacking victim on the head, and dragged the victim from the vehicle for approximately five feet. See PSR ¶ 22, at 8. In any case, although the Court acknowledges that some of the details surrounding Moreno-Hernandez' carjacking conviction are in dispute, the Court believes that, even if there was not violence involved, the crime of carjacking necessarily implies at least the threat of violence.

While the Court is sensitive to Moreno-Hernandez' medical condition, many individuals in the criminal justice system have diminished capacity or suffer from psychological disorders. The Court has difficulty distinguishing this crime of violence, to which Moreno-Hernandez pled guilty, from other crimes of violence that the Court, and federal courts in this district and around the nation, routinely encounter. The Court believes that, under the Guidelines, Moreno-Hernandez' case falls within the heartland of cases. Moreover, the Court believes that, with the adjustment the Court has already made in Moreno-Hernandez' criminal history category, the resulting sentence is the correct guideline sentence. Accordingly, even if the Court is authorized to depart in this case, it would exercise its discretion not to depart.

## IV. THE COURT WILL VARY FROM THE GUIDELINES TO IMPOSE A REASONABLE SENTENCE.

Moreno-Hernandez' adjusted offense level of twenty-one, combined with a criminal history category of III, results in a guideline sentence of forty-six to fifty-seven months. Moreno-Hernandez argues that, in addition to his personal history and characteristics, several of the statutory factors pertinent to the Court's analysis under United State v. Booker counsel for a variance from the sentence the Guidelines recommend. Specifically, Moreno-Hernandez contends that the Court

should consider the need to afford adequate deterrence, the need to protect the public, and Moreno-Hernandez' rehabilitative needs.  See Sentencing Memorandum at 23.

While the Court does not think that Moreno-Hernandez' mental illness is an appropriate basis for it to grant a downward departure, the Court believes that his condition does mitigate his culpability to some degree and counsels for a variance from the sentence the Guidelines recommend. In addition, the Court notes that Moreno-Hernandez' guideline sentence is significantly enhanced because he has previously been convicted of a crime of violence.  The Court is not convinced, however, that Moreno-Hernandez is a violent person.  With the exception of the carjacking incident, the Court has not been presented with evidence that Moreno-Hernandez has a violent nature or has engaged in other violent conduct.  Moreover, the Court acknowledges that, during the carjacking incident, Moreno-Hernandez may have been trying -- at least in his mind -- to escape in an effort to avoid violence.

On the other hand, regardless of Moreno-Hernandez' non-violent nature, the Court recognizes that mentally ill individuals, and specifically those who suffer from schizophrenia, can become dangerous to themselves and others because they misperceive situations.  Indeed, this may have been the case during the carjacking incident for which Moreno-Hernandez was convicted. Consequently, while the Court believes that some variance is appropriate, the Court must ensure that the degree of variance is not so extreme that it elevates the risk to the public.  In the absence of unusual circumstances, the Court typically sentences at the low end of the guideline range, so without a variance, Moreno-Hernandez faces a forty-six month sentence.  The Court believes such a sentence is too long, and something around thirty-seven months is more appropriate.  The Court believes that a variance which is the equivalent of two offense levels reflects a reasonable

compromise between the competing tensions in this case.

The Court will sentence Moreno-Hernandez consistent with an offense level of nineteen and a criminal history category of III; this combination results in a sentence range of thirty-seven to forty-six months. The Court believes that a sentence in this range reflects the seriousness of the offense, provides just punishment, and promotes respect for the law. The Court also believes that a sentence in this range provides adequate deterrence to Moreno-Hernandez and the public, protects the public's safety, and meets Moreno-Hernandez' rehabilitative needs. The Court understands that it cannot incarcerate Moreno-Hernandez for the purpose of treating his illness, but it recognizes that the sentence it will impose will give Moreno-Hernandez an opportunity to receive some medical care, and help him get accustomed to taking his medication, before he is compelled to make the transition back to life in Mexico.

In sum, the Court is not discounting the seriousness of Moreno-Hernandez' re-entry offense or his earlier carjacking conviction, but believes that a moderate variance is justified in this case. The Court believes that the resulting sentence is sufficient without being greater than necessary to satisfy federal sentencing goals. Finally, the Court notes that, at the sentencing hearing, the United States' counsel did not object to the Court's two-level variance and described the resulting sentence as "reasonable." Transcript at 29:2-3 (Cairns).

**IT IS ORDERED** that Moreno-Hernandez' factual objections to the PSR are sustained. The Court will grant Moreno-Hernandez a downward departure, pursuant to U.S.S.G. § 4A1.3(b), and sentence Moreno-Hernandez consistent with a criminal history category of III. The Court will not otherwise depart from the sentence the Guidelines recommend. The Court will grant a variance from the guideline sentence equivalent to two offense levels. Moreno-Hernandez is committed to the

custody of the Bureau of Prisons for a term of thirty-seven months.

                                              _____
                                              UNITED STATES DISTRICT JUDGE

*Counsel:*

Larry Gomez
   Acting United States Attorney
James D. Tierney
Norman Cairns
   Assistant United States Attorneys
Albuquerque, New Mexico

       *Attorneys for the Plaintiff*

Kari Converse
Albuquerque, New Mexico

       *Attorney for the Defendant*